16-1756

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

**Congregation Jeshuat Israel,**
*Plaintiff-Appellee,*

v.

**Congregation Shearith Israel,**
*Defendant-Appellant.*

---

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF RHODE ISLAND

---

# BRIEF FOR THE *AMICUS CURIAE*, RHODE ISLAND ATTORNEY
# GENERAL, IN SUPPORT OF APPELLEE AND AFFIRMATION

---

Adam J. Sholes, Bar No. 1135478
Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel. (401) 274-4400, Extension 2219
Fax (401) 222-3016
ajsholes@riag.ri.gov

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

INTEREST OF THE AMICUS CURIAE ............................................................... 1

ARGUMENT ............................................................................................................ 2

I.      THE DISTRICT COURT CORRECTLY CONCLUDED THAT THE MYER MYERS RIMONIM ARE NOT HELD AS PART OF A CHARTIABLE TRUST .................................................................................. 2

II.     THE DISTRICT COURT APPROPRIATELY HELD THAT TOURO SYNAGOGUE IS OWNED AS PART OF A CHARITABLE TRUST FOR THE BENEFIT OF THE JEWISH COMMUNITY OF NEWPORT .... 3

    A.    The District Court properly ruled that CSI does not own Touro Synagogue as fee simple owner ........................................................... 3

    B.    Elements of a charitable trust .............................................................. 4

    C.    The totality of the evidence points to the existence of a charitable Trust ....................................................................................................... 6

    D.    The Rhode Island Attorney General does not need to be a party in every action affecting a charitable trust ................................................ 9

    E.    No prior litigation between the parties has addressed whether Touro Synagogue is held as part of a charitable trust ......................... 10

CONCLUSION ...................................................................................................... 12

CERTIFICATE OF COMPLIANCE ..................................................................... 13

CERTIFICATE OF SERVICE .............................................................................. 14

# TABLE OF AUTHORITIES

**CASES**

Brice v. Trustees of All Saints Memorial Chapel, 76 A. 781 (R.I. 1910) .............5, 6

Buchanan v. McLyman, 153 A. 305 (R.I. 1931) .............................................. 6, fn2

Carpenter v. Smith, 89 A.2d 171 (R.I. 1952).............................................................7

Chile v. Beck, 452 A.2d 628 (R.I. 1982) ...................................................................7

City of Providence v. Payne, 134 A. 280 (R.I. 1926)................................................5

David et al. v. Levy et al., 119 F. 799 (D.R.I. 1903)..........................................10, 11

Desnoyers v. Metropolitan Life Ins. Co., 272 A.2d 688 (R.I. 1971)........................4

Jackson v. Phillips, 96 Mass. 550 (1867) .................................................................5

Lazarus v. Sherman, 10 A.3d 462 (R.I. 2011) ..........................................................6

Leo v. Armington, 59 A.2d 371 (1948) .....................................................................1

MacDonald v. Manning, 239 A.2d 644 (R.I. 1968)..................................................4

Ray v. Simmons, 11 R.I. 268 (R.I. 1875) ..................................................................4

Rhode Island Hospital Trust Co. v. Thomas, 54 A.2d 434 (R.I. 1947).....................7

Steinhof v. Murphy, 991 A.2d 1028, 1033 (R.I. 2010) .........................................6, 7

Tillinghast v. Council at Narragansett Pier, R.I. of Boy Scouts,
133 A. 663 (R.I. 1926) ..............................................................................................5

Wood v. Trustees of Fourth Baptist Church, 61 A. 282 (R.I. 1905) ........................5

## **STATUTES**

R.I. Gen Laws § 18-9-4 ...................................................................................... 4, 8

R.I. Gen Laws § 18-9-5 ....................................................................................... 1, 9

## **OTHER**

Restatement of Trusts (Third) §13 cmt.b (2001) ...................................................... 4

Restatement of Trusts (Third) §28 cmt.c ................................................................. 5

## **INTEREST OF THE AMICUS CURIAE**

Under Rhode Island law, the Attorney General is charged with representing the public interest with respect to charitable trusts.  See Rhode Island General Laws § 18-9-5; see also Leo v. Armington, 59 A.2d 371, 371 (1948)("the attorney general is the representative of the interests of the public under charitable trusts…[.]").  As such, shortly before the commencement of the trial, the District Court granted leave for the Rhode Island Attorney General to participate in the proceedings as an *amicus curiae*.  Thereafter, attorneys from the Attorney General's Office were present during the trial and the Attorney General submitted a post-trial memorandum setting forth the Attorney General's position based on the evidence admitted at trial.

The Attorney General's interest in every matter that affects a charitable trust is to ensure that the intent of the charitable trust is complied with in accordance with the terms of the trust.  Because the Attorney General is charged with protecting the public interest with respect to charitable trusts, the Attorney General has an interest in protecting the charitable nature of the trust identified by the District Court in this case.  Namely, that Touro Synagogue should be used as an active place of public worship for the Jewish community of Newport in perpetuity.  Hypothetically,[1] if the

---

[1] Admittedly, there is no evidence that CSI has ever explored the option of selling Touro Synagogue.  However, circumstances change and the future is unpredictable.  As fee simple owner, CSI would have unfettered discretion to do what it pleased with Touro Synagogue.

1

District Court's decision is overturned and Congregation Shearith Israel ("CSI") is deemed to be the fee simple owner of Touro Synagogue, there would be no legal obstacle preventing CSI from closing Touro Synagogue, selling the building and then using the proceeds of the sale for CSI's own operation in New York City.

After the trial, the Attorney General urged the District Court to rule that the building known as Touro Synagogue was held as part of a charitable trust with CSI as Trustee and the Jewish Society of Newport as the beneficiary. The Attorney General also opined that the evidence at trial did not establish that the Myer Myers rimonim was included as part of the corpus for the charitable trust. Respectfully, the Attorney General takes these same positions with this Court.

## ARGUMENT

### I. THE DISTRICT COURT CORRECTLY CONCLUDED THAT THE MYER MYERS RIMONIM ARE NOT HELD AS PART OF A CHARTIABLE TRUST

As to the Myer Myers rimonim, which is the main focus of both parties in this litigation, the Attorney General believes that the evidence at trial failed to establish that it is held as part of the same charitable trust as Touro Synagogue. Unlike the documented evidence spanning centuries supporting the position that Touro Synagogue is held in trust for the Jewish Society of Newport, there is no documentation supporting the same conclusion for the Myer Myers rimonim. The District Court spent considerable time and effort in its decision delving into the

2

historical records when ruling that Congregation Jeshuat Israel ("CJI") is the owner of the rimonim. The Attorney General, as Rhode Island's Administrator of Charitable Trusts, agrees with the District Court's conclusion that the rimonim are not held in charitable trust. With that said, the Attorney General takes no position with respect to this private property dispute, other than opining that, based on the evidence, the rimonim is private property.

## II. THE DISTRICT COURT APPROPRIATELY HELD THAT TOURO SYNAGOGUE IS OWNED AS PART OF A CHARITABLE TRUST FOR THE BENEFIT OF THE JEWISH COMMUNITY OF NEWPORT

### A. The District Court properly ruled that CSI does not own Touro Synagogue as fee simple owner

The Attorney General agrees with the District Court's ruling: "the Touro Synagogue and lands have been the corpus of a charitable trust since the lands were acquired and the Synagogue built. This charitable trust was established to ensure a permanent place for public Jewish worship in Newport." Decision ("Dec.") at 49. CSI seemingly does not dispute this finding on appeal, instead arguing in part that its removal as trustee of this trust was improper. Because CSI disputed the existence of a charitable trust at trial and argued that it owned the building and land as fee simple owner, the Attorney General believes it is important that this Court affirm that the District Court correctly ruled that Touro Synagogue and its lands are held as part of a charitable trust for the benefit of the Jewish community in Newport.

3

### B. Elements of a charitable trust

Rhode Island law defines a charitable trust as "…any fiduciary relationship with respect to property arising as a result of a manifestation of an intention to create it and subjecting the person by whom the property is held to equitable duties to deal with the property for charitable, educational, or religious purposes." R.I. Gen. Laws § 18-9-4; see also Restatement on Trusts (Third) §13 cmt. b (2001) ("No particular manner of expression is necessary to manifest the trust intention."). A trust may be created, among other ways, by the conveyance of property in a trust, a will, or by a declaration of the donor that he holds the property in trust for the benefit of another. See Ray v. Simmons, 11 R.I. 266, 268 (R.I. 1875). In creating a trust, no particular words are necessary; it is enough for the property to be conveyed by one to another, *in trust*. Id. (emphasis added); see also MacDonald v. Manning, 239 A.2d 640, 644 (R.I. 1968) ("…technical words such as trust, trustee or charity are not essential to the creation of a charitable trust, such a trust may be given effect if the testator's language makes clear his intent to make a gift in trust for a public charitable purpose"). Creation of a trust simply requires "a present intent to make a trust or gift at the time," "an execution of the intent by some act…or a notice and acceptance of the trust," and such intent or act must "give a present right or benefit to the donee." Desnoyers v. Metropolitan Life Ins. Co., 272 A.2d 683, 688 (R.I. 1971).

Moreover, equity is particularly favorable to charitable trusts. City of Providence v. Payne, 134 A. 276, 280 (R.I. 1926). Even where the "terms of a gift of property may be somewhat uncertain, if it appears to have been the purpose of the donor to limit property to a benevolent public use, it will be held to be a gift to public charity." Id. Charitable trusts that "cannot be upheld in ordinary cases, for various reasons, will be established and carried into effect when created to support a gift to a charitable use." Id. (*quoting* Jackson v. Phillips, 96 Mass. 539, 550 (1867)). "It is well settled that a gift … for the advancement of religion is charitable." Wood v. Trustees of Fourth Baptist Church, 61 A. 279, 282 (R.I. 1905).

Additionally, unlike private trusts, a charitable trust can be created despite lack of a definitive beneficiary. Restatement (Third) of Trusts § 28 cmt. c ("A charitable trust can be created although it has no definite or definitely ascertainable beneficiary."). Therefore, a trust creating a place of public worship for the benefit of an indefinite number of people where the membership may change from time to time, constitutes a valid charitable trust. See Tillinghast v. Council at Narragansett Pier, R.I. of Boy Scouts, 133 A. 662, 663 (R.I. 1926); Brice v. Trustees of All Saints Memorial Chapel, 76 A. 774, 781 (R.I. 1910). Such a trust does not later "fail either for nonuser or misuse; but a court of equity in the exercise of its powers will see that it is carried on in some form in order to carry out the general charitable intent of the

donor." Brice, 76 A. at 781; see also Buchanan v. McLyman, 153 A. 304, 305 (R.I. 1931).

### C. The totality of the evidence points to the existence of a charitable trust

The Attorney General agrees with the factual findings of the District Court when it concluded a trust exists. Dec. at 50-56. As the Attorney General opined after the trial, the overwhelming record at trial points to the existence of a charitable trust. Perhaps most revealing of the documents is the will of the Rivera dated 1787. (CJI Exhibit 31 at trial). In it, Rivera declared as follows:

> Also I do hereby declare and make known unto all proper persons that I have no exclusive right or title, of, in, or to the Jewish Public Synagogue in Newport on account of the Deed thereof being made to myself, Moses Levy & Isaac Harte, **which the same was done, meant and intended in Trust only, to and for the sole Use, Benefit and Behoof of the Jewish Society of Newport, to be for them reserved as a Place of Public Worship forever**. Therefore I do for myself and my Heirs hereby remise, release and forever quit claim to all exclusive right, Title or Interest therein or thereto and to every part and Parcel thereof, Always saving and excepting such right as I have by being a single member of that Society (emphasis added). Addendum ("Add.") A2864.

The Rhode Island Supreme Court has held that its "primary objective when construing language in a will or trust is to ascertain and effectuate the intent of the testator or settlor as long as that intent is not contrary to law." Lazarus v. Sherman, 10 A.3d 456, 462 (R.I. 2011) (*citing* Steinhof v. Murphy, 991 A.2d 1028, 1033 (R.I. 2010)). In doing so, the court should initially examine the will or trust's "plain

6

language." Id. However, the language of a phrase "should be interpreted with reference to the whole trust" or will. Steinhof, 991 A.2d at 1033 (*citing* Chile v. Beck, 452 A.2d 626, 628 (R.I. 1982)). Additionally, the Rhode Island Supreme Court "has stated many times in effect that each will must be considered in the light of its particular language and the circumstances surrounding its making." Rhode Island Hospital Trust Co. v. Thomas, 54 A.2d 432, 434 (R.I. 1947); see also Carpenter v. Smith, 89 A.2d 168, 171 (R.I. 1952) ("It is our duty in construing the will to throw our minds back to the time when it was made.").

Here, the language in the will of Rivera makes clear that the sole purpose of the Newport Synagogue is for the "Use, Benefit and Behoof of the Jewish Society of Newport, to be for them reserved as a Place of Public Worship forever." When Touro was vacant in the 19th century, CSI, either knowingly or by default, assumed the role of trustee of the trust. Dec. at 30. This relationship was documented at different times. For instance, in 1945, CSI and CJI signed an agreement with the United States Department of Interior to designate Touro Synagogue as a national historic site. CJI Exhibit 90 at trial; Add. A2035. In pertinent part, the 1945 Agreement was entered into by the Shearith Israel Trustees "as Trustees under Deed of Trust dated April 27, 1894[.]" Id. This agreement went on to describe the Trustees of CSI as "the holders of the fee simple title upon certain trusts in the Touro Synagogue[.]" Id. Article I(f) of the 1945 Agreement states:

7

> the public shall be admitted to all parts of said Touro Synagogue…**so far as consistent with the preservation of the Synagogue for the use, benefit and behoof of the Jewish Society in Newport as a place of public worship forever** and for the maintenance of divine services in accordance with the ritual, rites and custom of the Orthodox Spanish and Portuguese Jews as practiced and observed in the Synagogue of said Congregation Sherith Israel… Id. (emphasis added).

Viewed in its totality, there is no doubt that the 1945 Agreement explicitly evinces a "…fiduciary relationship with respect to property arising as a result of a manifestation of an intention to create it and subjecting the person by whom the property is held to equitable duties to deal with the property for charitable, educational, or religious purposes." R.I. Gen. Laws § 18-9-4.

The beneficiary of the trust is the "Jewish Society of Newport."[2] CJI is the current incarnation of the Jewish Society of Newport, it is: 1) a Jewish congregation; 2) located in Newport and; 3) follows the Western Sephardic Jewish traditions as practiced by the original colonial Newport congregation and currently observed by CSI. Indeed, the evidence at trial was clear that, at this time, there is no other "Jewish Society" or group existing in Newport that more closely resembles or represents the Jewish Society of Newport as intended by the original colonial congregants.[3]

---

[2] The Attorney General does not take the position that CJI is the exclusive beneficiary under the trust. See Buchanan, 153 A. at 305 ("It is well established that a trust creating a place for public worship for the benefit of an indefinite number of persons is a good and valid trust to a charitable use").

[3] The only other Jewish groups referenced at trial were a conservative congregation in Middletown and perhaps a group of reform Jews that meet in Newport.

8

Moreover, CSI conceded that it had no contact with any other Jewish group in Newport. Without question, CJI is an intended beneficiary of the charitable trust created by the original founders of Touro Synagogue in the 18th Century.

### D. The Rhode Island Attorney General does not need to be a party in every action affecting a charitable trust

Although the Rhode Island Attorney General is the Administrator of Charitable Trusts, Rhode Island law does not require the Attorney General be named an actual party in every action affecting a charitable trust. R.I. Gen. Laws § 18-9-5 states:

> The attorney general **shall be notified** of all judicial proceedings affecting, or in any manner dealing with, a charitable trust, or affecting, or in any manner dealing with, a trustee who holds in trust within the state property given, devised, or bequeathed for charitable, educational, or religious purposes, and who administers or is under a duty to administer the property in whole or in part for these purposes within the state, and **shall be deemed to be an interested party to the judicial proceedings**. (Emphasis added).

By the clear language of this statute, then, the Attorney General must be notified of all judicial proceedings involving a charitable trust but it is within his discretion to seek to intervene or join in the action. As the District Court aptly noted, "[t]his provision would be illogical if the attorney general were required to be a plaintiff in all such proceedings because that would obviate the need to deem the attorney general an interested party." Dec. at 92.

9

As it relates to the instant matter, the Attorney General was in fact notified of the judicial proceeding and participated as an *amicus*. The Attorney General was present at the trial, had access to all of the exhibits, listened to the arguments from both parties and submitted a post-trial memorandum. After reviewing the evidence, the Attorney General represents to this Court that even if he had moved to intervene as a full party, his ultimate position at the conclusion of the trial would have been the same. The Attorney General did not take a position with respect to the removal of CSI as trustee and subsequent appointment of a new trustee.[4] Although the Attorney General takes the same position at this stage, he recognizes that the District Court made factual findings supported by the record at trial and does not take issue with any portion of the District Court's ruling.

### E.     No prior litigation between the parties has addressed whether Touro Synagogue is held as part of a charitable trust

Although CSI does not appear to challenge the existence of a charitable trust in which Touro Synagogue is held, CSI argues that the doctrine of *res judicata* applies to some of CJI's legal argument with respect to ownership. Because CSI does not challenge the District Court's ruling that Touro Synagogue is held in trust, the *res judicata* effect of David et al. v. Levy et al., 119 F. 799 (D.R.I. 1903), is not

---

[4] It bears mentioning that subsequent to the District Court's decision, CJI registered as Trustee of the charitable trust with the Attorney General's Charitable Trust Unit. The charitable trust was not previously registered with the Attorney General's Office.

apparent. Even CSI would concede that David has no *res judicata* effect if the Attorney General sought to declare that Touro Synagogue is held in trust.

The decision in David did not bar the District Court from determining whether Touro Synagogue was held in a charitable trust. In David, Judge Brown essentially dismissed the action for procedural defects and never reached the merits of the parties' claims. Id. In its ruling, the court held "the bill is fatally defective for its omission to set forth that any one of the complainants is a Jew." Id. The court went on to say "it is difficult to imagine how the 'Congregation Jeshuat Israel, a corporation created by law' can be regarded as having any right or interest in such a trust, since a domestic corporation of this State cannot be regarded as a Jew of Newport." Id. Noting that to the extent the Rivera will creates a trust (which the judge ultimately did not make a decision on), "it is a trust for a Jewish Society," and "[t]here is no allegation that these complainants have any standing as members of a Jewish Society." Id. at 800. The court never reached the substantive issue of whether Touro Synagogue is held in trust and for whom. Judge Brown also noted that CSI had recently evicted the members from Touro after CJI's forcible entry into the building, so that CJI should be barred from seeking equity. Id.

Even assuming *arguendo* that the issue of whether a trust existed was decided in the 1903 litigation, the District Court was not met here with the same circumstances as existed at that time. Subsequent to that decision, the 1945

Agreement with the U.S. Department of the Interior was entered into some four decades after <u>David</u> was decided. The overwhelming evidence at trial evinced both the intent and actual practice among the parties that Touro Synagogue was held in trust for the benefit of the Jewish community in Newport. If this Court reverses the District Court with respect to the creation of a charitable trust, the result may potentially jeopardize the perpetual goal of ensuring Touro Synagogue remains an active place of Jewish worship for the Jewish community of Newport.

## **CONCLUSION**

For the reasons set forth herein, the Attorney General respectfully requests that the Honorable Court affirm the District Court's decision.

Respectfully submitted,

AMICUS CURIAE

PETER F. KILMARTIN
ATTORNEY GENERAL


<u>/s/ Adam J. Sholes</u>
Adam J. Sholes, Bar No. 11354
Assistant Attorney General
150 South Main Street
Providence, RI  02903
Tel. (401) 274-4400, Extensions 2219
Fax (401) 222-3016


Dated: December 14, 2016

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

 X   this brief contains [3,129] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

 ___   this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

 X   this brief has been prepared in a proportionally spaced typeface using [Microsoft Word 2007] in [14 point font size, Times New Roman], *or*

 ___   this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Signature: /s/ Adam J. Sholes

Attorney for Amicus Curiae

Dated: December 14, 2016

## **CERTIFICATE OF SERVICE**

      I hereby certify that on December 14, 2016, I electronically filed the foregoing Brief of *Amicus* with the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. All participants in the appeal are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ Adam J. Sholes